**[Cite as *State v. Sugar*, 2026-Ohio-1984.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 25AP-593 |
| v. | : | (C.P.C. No. 24CR-1838) |
| Thomas J. Sugar, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 28, 2026

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Jeffery D. Devereaux*, for appellee.

**On brief:** *Jeffery M. Lewis Co.*, *L.P.A.*, *Evan J. Lewis*, and *Jeffrey M. Lewis*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Thomas J. Sugar, appeals the July 17, 2025 judgment of the Franklin County Court of Common Pleas, which ordered him to serve a 15-day community control sanction for failing to provide his tax documents to the probation department and for testing positive for marijuana. Sugar asserts three assignments of error:

> [1.] The trial court erred when it found Mr. Sugar violated the terms of his community control sanctions in the absence of substantial (or for that matter, any) evidence to warrant such a finding.

> [2.] The trial court erred and deprived Mr. Sugar of his due process rights by failing to hold the required CCS violation hearings.

[3.] The trial court erred when it failed to follow the relevant sentencing statutes in imposing a sanction for violation of CCS terms.

Plaintiff-appellee, State of Ohio, has conceded error in part, admitting that the trial court failed to grant Sugar the right to allocute prior to announcing the sanction.

{¶ 2} On April 21, 2025, Sugar pleaded guilty to fourth-degree felony assault on a police officer in the criminal case underlying this appeal. He had been indicted for assault, obstructing official business, harassment with a bodily substance, and felony operating a motor vehicle under the influence of alcohol and/or a drug of abuse on April 15, 2024, and the remaining charges were dismissed at the state's request. That same day, he entered a plea of guilty to a separate fourth-degree felony vandalism charge under a different common pleas case number, Franklin C.P. No. 25CR-191. Although the record is not completely clear as to the facts of the assault offense, it seems that the assault stemmed from his arrest on the OVI charge and occurred while he was being processed on that charge. In the related vandalism case, Sugar apparently severely damaged or destroyed the "Brutus Buckeye" and/or Woody Hayes statutes in front of the College Traditions OSU memorabilia store located on Lane Avenue.[1] (*See* July 17, 2025 Tr. at 4-5; Franklin C.P. No. 25CR-191 Mar. 4, 2025 Resp. to Def.'s Req. for Disc., Bill of Particulars.)

{¶ 3} The trial court imposed a risk reduction/mental health caseload sentence of 5 years community control and warned Sugar that he could serve a prison term of 18 months as a sanction for violating the terms of his release on community control. Sugar was required to submit to random drug screening as a condition of his community control release. His sentencing entry stated that he was required to have no alcohol or THC, that he would be placed on SOBERLINK, that he must "submit to random urine screens as directed by the Adult Probation Department," and that "[f]or every positive test or missed screen[, he] shall serve Five (5) days at FCCC." (Apr. 21, 2025 Jgmt. Entry at 2.) The felony sentencing sheet also indicates that Sugar was required to "Obtain/Maintain Employment and/or Employment Program" as a condition of his community control sanctions, and it included a special notation that the court would impose a "[5-day sanction] for dirty or missed [screens]; no alcohol or THC; no bars or establishments that sell liquor; no weapons. . . . Defendant to be placed on SCRAM." (Apr. 21, 2025 Felony Sentencing Sheet

---

[1] The vandalism plea and the sentencing on that charge occurred at the same sentencing hearing underlying this appeal, but that record has not been transmitted to this court.

at 1.) The court also set a miscellaneous hearing for 60 days from sentencing "to review [SCRAM] and entrance into bars and other establishments." *Id.* On May 23, 2025, and following another hearing, the court issued additional conditions of community control, stating, "Defendant [is] to be referred to Aver Health and be fitted for SCRAM then Soberlink can be removed." (May 23, 2025 Additional Conditions of Community Control at 1.)

{¶ 4} On June 23, 2025, the trial court filed an entry scheduling a miscellaneous hearing in the case for July 17, 2025. The record does not indicate what prompted the court to schedule the miscellaneous hearing, but Sugar's brief in this case states as follows:

> At the June 23, 2025 Hearing, Mr. Sugar was ordered to provide a drug screen, which came back positive for THC. . . . Off the record, Counsel for Mr. Sugar explained to the trial court that the reason for the positive result was likely the confusion in May regarding Mr. Sugar's medical marijuana status and suggested that the matter be continued to check Mr. Sugar's compliance with the community control order in July, as it is Counsel's understanding that it generally takes four weeks or so for marijuana to pass through a person's system. . . . In accordance with Counsel's suggestion, the matter was re-set for a "misc hearing" on July 17, 2025.

(Brief of Appellant at 3.) On July 17, 2025, the court held a hearing, and Sugar tested negative for THC on that date. (Tr. at 3.) Notwithstanding, the court stated as follows:

> One of the problems we have is the defendant, although told that he was not authorized to use THC, continues to use THC. Yet today he managed to somehow be clean, which tells me he's cheating or there's some lying going on. I'm not sure what exactly is going on.
>
> But you've tested positive a number of times. You were told until the Court approved your use of THC, you are not allowed to use THC. Your misunderstanding with my very clear words is your problem, and it will be your problem today.

*Id.* Additionally, the court noted that there "also is an issue with your failing to provide probation your proof of income, which because you're self-employed would have to be your tax forms, and you haven't brought them to probation." *Id.* The court specifically stated that the July 17 hearing "is a miscellaneous hearing. This isn't a revocation hearing." *Id.* The court then permitted the victims of the vandalism offense to speak because "they're

owed a substantial amount of restitution." *Id.* at 3-4. The attorney for the victims of the vandalism offense stated on the record:

> I'm here on behalf of the College Traditions. College Traditions is a 41-year-old business on Lane Avenue near Ohio State football stadium. We sell Ohio State paraphernalia and gear.
>
> You know, as a small business, part of our attraction is the Brutus statue and Woody Hayes statute [sic], and we're God's people. Unfortunately, that's created quite a hardship for our business. We were able to replace the statute [sic] at a cost of $18,607.

*Id.* at 4. The court had apparently ordered restitution to the victims in the amount of $18,607.60 in the vandalism case. (Franklin C.P. No. 25CR-191 Apr. 21, 2025 Jgmt. Entry at 2.) But the transcript indicates that Sugar had only paid $160 in restitution as of the date of the hearing. (Tr. at 6.) The court addressed Sugar and observed that he "ha[d] not provided the probation department with your tax documents, which means we, in turn, don't know what you're really making and whether you're even trying to make money to pay the restitution." *Id.* at 8. Apparently frustrated with Sugar, the court continued:

> If you do not comply with the Court orders, there's a punishment, and you will learn that today. You're going to be taken into custody. You are going to serve a five-day sanction for testing positive for marijuana again. You're not allowed to use marijuana, period. I don't care if it's legal. I don't even care if your doctors tell you you need it. You're not allowed to use it.
>
> Also you need to provide your tax documents. So you will serve a 10-day sanction on top of the five days for failing to provide your tax documents to the probation department.
>
> Upon your release from jail, you'll need to go the next day to meet with your PO, or someone in their department, and provide those tax documents.
>
> If you are not even making enough money in your personal business ventures to support yourself, at that time I'm going to order you to get a job with a paycheck, and then we're going to re-evaluate what restitution should be. Because at this rate, you're not going to pay it off in the five years I have to keep you on probation. If you're not going to pay it off, you're going to have another sanction. And if you're not going to follow court rules, you're going to prison. Do you understand that?

(Tr. at 8-9.) Shortly thereafter, the following exchange occurred:

THE COURT: And we will set another miscellaneous hearing out 90 days from now.

Anything from the defense?

[DEFENSE COUNSEL]: Your Honor, the Court won't consider allocution today?

THE COURT: No.

[DEFENSE COUNSEL]: Fair enough.

(Tr. at 10.)  The court ordered Sugar "to serve [a] 5[-]day sanction for testing positive for marijuana" and "to serve a 10[-]day sanction for failing to provide tax documents to probation," for "a total of 15 days [to be served] forthwith."  (July 17, 2025 Criminal Case Processing Sheet at 1.)  Sugar was arrested, and he immediately appealed and requested a stay.  This court issued a stay pending appeal and ordered his immediate release from jail on July 21, 2025, (*see* July 21, 2025 Journal Entry at 1 (certified copy)), and the following day issued a clarifying entry stating that his release was to be "on the same terms of community control imposed in the April 21, 2025 judgment of conviction and sentence and subsequently modified by the trial court on May 23, 2025."  (July 22, 2025 Journal Entry at 1 (certified copy).)  This appeal followed.

{¶ 5}  As an initial matter, the state has confessed error as to the trial court's refusal to accept Sugar's allocution. Sugar's brief observes that

> the only point at which the trial court allowed counsel for Mr. Sugar to speak (which occurred only after it conclusively imposed the fifteen-day sanction), counsel requested the trial court consider allocution. . . . The trial court unequivocally responded, "No." . . . In other words, the "hearing" provided no notice, no evidence, no opportunity to be heard, no opportunity to cross-examine witnesses, and no provision of the rights provided by the applicable sentencing statutes.

(Brief of Appellant at 5.)  The state admits only that the trial court's refusal to consider allocution was error, asserts that "the appropriate remedy is a remand for resentencing," and argues that "this Court need not address any of Sugar's other arguments in his three assignments of error."  (Brief of Appellee at 8.)[2]

---

[2] The state also suggests that this court may lack jurisdiction over Sugar's appeal because the criminal case processing sheet that imposes the sanctions is not a final order. The state observes that under *State v. Tripodo*, 50 Ohio St.2d 124, 126 (1977), a "document not labeled a judgment nor unequivocally intended to be a judgment does not constitute a judgment triggering the time within which to file a notice of appeal." Essentially, the state has argued that because the criminal case processing sheet is not captioned as a "Judgment Entry," it cannot be a final order. We disagree. While the "one-document rule" of Crim.R. 32(C)

{¶ 6}    We agree, and we further observe that the trial court's decision seems to rely on a misunderstanding of the due process required to conclude that a probationer has violated the terms of a community control sanction. *Compare* Brief of Appellant at 5 *with* R.C. 2929.15 (setting forth requirements and procedures for imposition of, finding violation of, and revocation of community control sanctions). Community control condition violation hearings are subject to the due process protections set forth in *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty. Accordingly, we hold that a probationer, like a parolee, *is entitled to a preliminary and a final revocation hearing. . . .*"). (Emphasis added.) Although the state has confessed error as to the question of allocution, it has not set forth an argument in its merit brief suggesting that courts may directly send someone on probation to jail without first complying with the requisites of due process.

{¶ 7}    Accordingly, we sustain Sugar's second assignment of error, vacate the trial court's July 17, 2025 judgment, and remand this case to the trial court for a community control violation procedure that comports with due process pursuant to *Gagnon*. Sugar's first and third assignments of error are overruled as moot.

*Judgment vacated;*
*cause remanded.*

MENTEL and EDELSTEIN, JJ., concur.

————————

and *State v. Baker*, 2008-Ohio-3330, only applies to judgments of conviction, this entry largely complies with it. *Tripodo* itself is clearly distinguishable, as it addressed a decision totally collateral to a conviction or imposition of a sanction—it involved a trial court's denial of a defendant's motion for a free transcript that had never been properly journalized. *Tripodo* at 126. Here, the entry names the two violations found, assigns the sanction days to be imposed for each, is electronically signed by the judge, and was filed with the clerk. *Compare with Baker* at syllabus. For a community control violation sanction entry, that is sufficient.